Good morning, your honors. My name is Arthur Torelli. I'm counsel for the appellant, Mr. Bullock. And the first issue I would like to address is the fact that... If you could speak into the microphone and speak. I'm sorry. I appreciate it. The first issue I'd like to address is the fact that in this particular instance, the court, we would submit, violated the rules in Baston by coming out with their own analysis and reasons for the striking of the jurors prior to giving the prosecution any opportunity or calling on the prosecution to give their reasons. And we would submit that that is error in that the prosecution's burden to give the reasons. And the court cannot substitute its own reasons for the reasons that the prosecution may or may not give. That also, I would submit, taints the entire process from there on. Specifically, it obviously speaks towards objectivity in terms of the court when it comes to the third step of analyzing and evaluating the reasons that were given. And perhaps more importantly, when it comes to the second step, the prosecution has already heard the reasons that the court feels are appropriate or... What actually happened, as I recall, is there was one motion, and there the judge did give his reasons. And then there was another motion. There were two more. What, two more motions or three more motions? Correct. Right. There were actually four altogether. Right. And on the second motion, though, the judge did find a prima facie case, right, and didn't give his own reasons. But you are going back over the same jurors. Well, and in fact, what happened was he did not find a prima facie case on the first motion. Right. He found one on the second motion and then asked the prosecutor to justify all four, the ones from the first motion as well. Right. And it was really the ones from the first motion that he gave his reasons for in the context of doing that. But it then subsequently affected the second step because the prosecutor already heard the reasons that the court felt were sufficient and basically to a large extent just reiterated the reasons that the court had given. So in that respect... I mean, I think the question of what was done in this case is nothing but AEDPA. I mean, i.e., it's nothing but AEDPA, i.e., how can we say that what was done was unreasonable? So it seems to me that's where you have to focus your remarks. I mean, we have a set of explanations. We have findings by the trial court and by the district court. And how do we go behind them? Even though, I mean, there were six out of eight challenges. That's a lot. There were what? Pardon me? There were six. They probably challenged six out of the eight African-American jurors. That's substantial. Correct. Correct. Well, I think part of it is the fact that we ended up also, through this process, not having any decent voir dire or any questions that addressed what basically are demeanor reasons, as opposed to the court even said in its own regard that there was nothing in anything that any of the jurors said or any answers to any questions that would have resulted in any problem or any reason to exclude them. So we're basically just talking about demeanor, which is a relatively abstract thing to do. And in that instance, I would submit that that brings about a requirement of looking into things a little more deeply and testing the credibility of those things. Well, we have to review the last reasoned decision of the State court to see whether it was contrary to clearly established law or unreasonable. Now, where did the court of appeal go wrong? By the court of appeal, I believe in large part due to the fact that the prosecution can give their reasons, and if those reasons are sufficient to be reasonable from the standpoint that they are things that would be considered and are proper reasons that you would consider to strike a juror, that that's acceptable. And as I'm saying, I believe that there's further evaluation that needs to be done in an incident like that. So do you think the court of appeal went wrong because it permitted the trial court to simply accept the proper reasons of the prosecutor? Yes, I do. I think that is fair, yes. In addition, as I say, it then affected the second step. And then it also, the other thing I would like to touch on is the fact that significantly, well, first of all, the court itself recognized the impropriety of what it had done when dealing with a subsequent juror. The court itself said, I observed the same things that the prosecutor observed, but I wasn't going to say anything because I didn't want to feed information to the prosecutor. But moving on, I think the last thing that I'll address is that the defense was cut off in both instances where they were attempting to present their response. And particularly the second time, I believe after the third motion, when the court basically said, I can rely on my own observations, which I would take issue with to begin with. And I also will say that I don't believe that it's necessary or that I'm inclined to have any defense response because nothing that can be said would change my mind. And that, I think, is cutting off step three, taking it away from the defense, and adds to the further problem of whether or not there would have ever been able to get to the point of thinking whether comparative analysis would be appropriate because that cut off the chance for the defense to possibly make some kind of a record in that regard. Thank you. Good morning. May it please the Court. I would like to go back to Your Honor's question, where did the court of appeal go wrong? And it didn't in this case. And neither did the trial court. We have a very extensive record. The prosecutor gave very specific reasons. It wasn't cases where they just said, oh, I didn't like the demeanor of the juror and, you know, I didn't like the way she looked at me. The prosecutor was very specific in the way in which she described the problem she had with the stricken jurors. Then the court explained that it either saw what the prosecutor saw and believed what the prosecutor said. But in the first, with regard to the first motion, the prosecutor didn't say anything, right? The trial court did. Correct. Because there was no prima facie case found. Right. So what the trial court did was give his demeanor analysis, which was, I think, strictly a demeanor analysis. Yes. With regard to two of the jurors. Well, the first one was also that he didn't like attorneys and had a cousin who was in jail. But the trial judge gave reasons. Yes. And that does sort of screw up the process, because it means that you're not really when it came up the second time, the attorney already, the prosecutor already knew what the, what was going to satisfy the judge, so he just pretty much repeated it. Well, there's no cases that say that that's improper in any way. I mean, had there not been a second or third or fourth motion, we would just be dealing with the prima facie, no prima facie case. We want that record from the judge. We want the judge to make a record and say, here's why I don't find a prima facie case, because I saw this on this juror, I saw this reason for this juror, and so I don't find a prima facie case. The court did not know that there was going to be a second or a third or a fourth motion made and that the prosecutor might later have to justify those strikes. And none of the cases cited by appellant are situations like this where the prosecutor later simply repeats the same qualities that it, that it saw in the, that he or she saw in the jurors. Those cases are like Miller L., where appellate courts or review courts are looking back and saying, here's our reasons, here's what we think could have been the reason that they struck the juror, and making them up whole cloth without the prosecutor ever having said anything about it. But here, the prosecutor adopted those reasons and, and repeated those reasons and said, those are my reasons. And then the trial court evaluated that. The trial court looked at the juror, and this is a credibility finding, that, that trial courts are the proper place to make. He, the court looked at the, the prosecutor and, and determined whether he believed that's what the real reasons of the prosecutor. I mean, if the prosecutor was, was putting forth sham, sham reasons or just, yeah, I think what the court said is right and making it up, he could see that. He can look at the prosecutor and determine that. Kennedy. Well, but, you know, what's missing from this record is, that may be so, but on the other hand, because there was no comparative analysis by anyone, there's no basis to know, you know, whether the other people on the veneer exhibited the same traits or not, right? We have no, we have no way of knowing that because no one, you know, neither the lawyers or, or the counsel said it, or the court said anything about, you know, whether this juror's, whatever it was, body language or, you know, whatever made, made the judge or the lawyer suspicious about this juror were the same signs that was exhibited by other jurors. We don't know that, right? Well, that, that's true. Because there was no comparative analysis. Except to the extent the prosecutor pointed out that he, that she had, she'd kicked a white male juror for the same demeanor being a loner-based reason. And if defense counsel was given the opportunity to, to point that out and, or to say, listen, here's, here's these people she didn't kick who seemed lonerish or who, who said their name strangely. I mean, we're also dealing with demeanor, which is awfully hard to compare someone's answer on their, when they say their name versus someone else's. And so those, those factors. And, and appellant hasn't pointed to anything. I mean, even, even at this level, appellant hasn't looked at the record and tried to, to tease out anybody who might have been similar, who, who acted in a similar fashion, or, or any qualities that were similar. And so to that extent, that goes back to our. Well, that's because there's no record to look at. And then, you know, there are times, you know, when the judge says, well, you know, don't bother making an objection because I'm not going to change my mind. I mean, almost words to that effect, right? So what kind of record could he make? Well, he, he did then allow the defense counsel to go on speaking. And defense counsel simply reiterated, well, this is the third motion we've made. The prime, the issues that go more to a prima facie case. And the court at that point appropriately said, you know, and, and even in the second motion, after he said, I, I don't need to hear anymore, he did allow defense counsel to go on for two and a half pages. And so once he sort of focused him on the issue that we're looking at. And so defense counsel certainly could have, at that point, instead of saying, this is the third motion we've made and the fifth black juror that's been stricken, defense counsel could have said, well, juror number X also was a loner or juror number Y, you know, also folded her arms when, you know, was denied hardship. Well, and he did say some things like, I, I didn't see the hostility that you were talking about and so on. In the second motion, the defense counsel did and, and point, and tried to, tried to attack those demeanor-based justifications. And the court took that into consideration and, and explained why he believed that the prosecutor's, those, those justifications were proper. Unless there's any other questions, I'm prepared to submit it. Thank you. Case to start is submitted for decision.
judges: Schroeder, Tashima, Berzon